IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYLER Z. MILESCO, | : | 1:09-CV-1233 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORFOLK SOUTHERN | : | Hon. John E. Jones III |
| CORPORATION, NORFOLK | : | |
| SOUTHERN RAILWAY COMPANY, | : | |
| and ACF INDUSTRIES, LLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### January 5, 2010

Pending before the Court is a Motion to Dismiss filed by Defendant ACF

Industries, LLC ("ACF"). (Doc. 7) (the "Motion"). For the following reasons, the

Motion shall be granted in part and denied in part.

## I.    PROCEDURAL HISTORY

On June 5, 2009, Plaintiff Tyler Z. Milesco ("Plaintiff" or "Milesco") filed a

complaint against Defendants Norfolk Southern Corporation ("NSC"), Norfolk

Southern Railway Company ("NSR"), and ACF (collectively, "the Defendants") in

the Court of Common Pleas of Dauphin County. (Doc. 7-3). On June 29, 2009,

the Defendants removed the lawsuit to federal court. (Doc. 1). On July 6, 2009,

Defendant ACF filed the instant Motion. (Doc. 7). A supportive brief was filed

the next day. (Doc. 8). The Plaintiff filed an opposition brief on July 21, 2009.

(Doc. 13). Although ACF has not field a reply brief, the time in which to do so

has long since expired. Accordingly, the Motion is ripe for disposition.

## II.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292

F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to

2

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3). "[A] complaint must allege facts suggestive of [the proscribed] conduct," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 563 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 550 U.S. 554-56, 563 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. FACTUAL BACKGROUND[1]

At all relevant times, the Plaintiff was an employee of Schirillo, Inc. ("Schirillo"). Schirillo had an arrangement whereby it would dispose of the used railroad parts generated by NSC and NSR (collectively, the "Norfolk Defendants").[2] (*See* Compl. ¶ 7). One of the parts sent to Schirillo by the Norfolk Defendants was a Freight-Saver model 20B gas cushioning device, (the "Freight Saver"), a product manufactured by AFC. (*See id.* ¶¶ 4-5).

On June 29, 2007, Plaintiff, pursuant to the scope of his employment, was dismantling a Freight Saver that had been previously owned by the Norfolk Defendants and shipped to Schirillo for disposal. (*Id.* ¶¶ 5-7). Although the Norfolk Defendants were required to fully drain the hydraulic fluid and nitrogen gas from the Freight Saver before transporting it, upon its arrival at Shirillo there was no indication that this had been accomplished. (*Id.* ¶¶ 9-10).[3] However, prior to shipping the Freight Saver to Shirillo, the Norfolk Defendants did attach three

---

[1] Since we must construe the pleadings in the light most favorable to the non-moving party, the factual recitation contained herein is taken from the Plaintiff's complaint.

[2] NSR is a subsidiary of NSC. (Compl. ¶ 3).

[3] Indeed, Plaintiff avers that the device lacked any needle or valve indicating that the nitrogen gas had been vented as required by the applicable procedural manual. (*Id.* ¶¶ 9-10).

metal bars to the device in an ostensible attempt to ensure that its components would be held in place during transit. (*See id.* ¶¶ 8, 11).

During the dismantling process, Plaintiff used an oxy-acetylene torch to cut the steel bars welded to the device by the Norfolk Defendants. (*Id.* ¶ 11). Plaintiff avers that such a procedure was necessary to the disposal of the device. (*Id.*). As he was making his last cut on the first bar, Plaintiff asserts that the device "came apart," expelling both a piston and an "atomized mixture" of gas and other flammable fluids, which engulfed the Plaintiff. (*See id.* ¶¶ 12, 13). The torch ignited the afore-referenced mixture and caused an explosion and fire that resulted in Plaintiff sustaining third degree burns over 88% of his body. (*Id.* ¶¶ 12-14).

As result of this incident, Plaintiff filed a four-Count complaint against the Defendants. Count I contains a claim against the Norfolk Defendants arising out of their purportedly negligent failure to adequately vent the nitrogen gas trapped inside the Freight Saver's chambers. (*Id.* ¶¶ 22, 23). Count II contains a products liability claims based on manufacturing defects, design defects, and inadequate warnings. (*Id.* ¶¶ 24-29). Count III contains a breach of warranty claims against ACF premised on the implied warranty of merchantability and fitness for a particular purpose. (*Id.* ¶¶ 30-32).[4] Finally, Count IV contains a common law

_____

[4] Counts II and III are asserted in the alternative to Count I. (*See id.* ¶¶ 22-32).

negligence claim against ACF resulting from its putative failure to warn that nitrogen might not be adequately released from the Freight Saver despite attempt to do so, its alleged failure to provide a mechanism to adequately gauge whether the nitrogen had been vented, and its purported failure to provide warnings that instructed entities to ensure that the nitrogen gas had been adequately vented from the device prior to shipping it to third parties for disassembly or disposal. (*Id.* ¶¶ 33, 34).

## IV. DISCUSSION

The above captioned case is before us on the basis of diversity jurisdiction, as Plaintiff is a Pennsylvania resident and the Norfolk Defendants are Virginia companies. Since the issues at the heart of the instant Motion, the claims contained in Counts II-IV of the complaint, are controlled by state law, our initial task is to determine the applicable state law. Both ACF and the Plaintiff appear to agree that the law of the Commonwealth of Pennsylvania is controlling in this case. Given that Plaintiff was domiciled in Pennsylvania and that the vast majority of the conduct relevant to the incident undergirding the instant action occurred there, we agree. Accordingly, we will analyze the sufficiency of the claims presented in Counts II-IV based upon Pennsylvania law.

## A.    Count II–Products Liability

Having established that Pennsylvania law applies, we must identity what the

law of Pennsylvania is as it relates to the case at bar.  The dispute in this regard

centers around whether the Restatement (Second) of Torts ("Second RST") or

Restatement (Third) of Torts ("Third RST") is the source of controlling law.

There is no dispute that the Pennsylvania Supreme Court adopted the

Second RST in *Webb v. Zern*, 220 A.2d 853 (1966).  Plaintiff, however, argues

that as a result of the Third Circuit Court of Appeal's holding in *Berrier v.*

*Simplicity Mfg.*, 563 F.3d 38 (3d Cir. 2009), the Third RST is controlling.  In

*Berrier*, the issue before the Third Circuit involved whether the Third RST

superceded the Second RST in Pennsylvania law.  Since this issue of state law had

not been addressed by the Pennsylvania Supreme Court, the Third Circuit was

tasked with predicting how the Pennsylvania Supreme Court would decide the

issue. *See Berrier*, 563 F.3d at 46 (citing *Nationwide Mut. Ins. Co. v. Buffetta*, 230

F.3d 634, 637 (3d Cir. 2000)).  After engaging in a thorough review of

Pennsylvania law as it existed at that time, the *Berrier* Court ultimately concluded

that the Pennsylvania Supreme Court would adopt the Third RST.  In doing so, the

Third Circuit noted that the Pennsylvania Supreme Court had specifically certified

the following issue for appeal: "Whether this Court should apply § 2 of the

7

Restatement (Third) of Torts in place of § 402A of the Restatement (Second) of Torts." *Bugosh v. I.U. North America, Inc.*, 947 A.2d 897 (Pa. 2008).

However, 16 months after certifying *Bugosh* for appeal, the Pennsylvania Supreme Court entered a *per curiam* order dismissing the appeal as having been "improvidently granted." *See Bugosh v. I.U. North America, Inc.*, 971 A.2d 1228 (Pa. 2009). It is important to note that the action of the Pennsylvania Supreme Court was not accompanied by any rationale in support thereof, meaning that it never affirmatively passed judgment on the prudence of adopting the Third RST as the law in Pennsylvania. Nonetheless, certain conclusions can be reasonably distilled therefrom. Namely, it is instructive that when faced with the opportunity to supplant the Second RST with the Third RST the Pennsylvania Supreme Court declined the invitation to do so. While there could have been numerous reasons undergirding this decision, some of which may have had nothing to do with the contemplated supersession in the abstract, the dismissal of the appeal unmistakably indicates that such supersession is anything but a certainty. Consequently, taken in context, we believe that the Pennsylvania Supreme Court's dismissal of *Bugosh* was a clear indication that it intends for the Second RST to apply in the Commonwealth for the time being. *See generally Durkot v. Tesco Equipment, LLC,* 2009 WL 2902315 (E.D. Pa. 2009) (Hart, M.J.) (for the

proposition that *Bugosh* indicates the Third Circuit's prediction was erroneous, meaning the Second RST retains vitality in Pennsylvania).[5] Accordingly, we will apply the dictates thereof in resolving the issues implicated by Plaintiff's product liability claims.

To establish a strict product liability claim under Pennsylvania law, a plaintiff must allege and ultimately prove that: (i) the product was defective; (ii) the defect was the proximate cause of the injury; and (iii) the defect existed at the time the product left the manufacturer's control. *See Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1170 (Pa. 1995). There are three types of defective conditions which may give rise to strict liability: (i) manufacturing defects; (ii) design defects; and (iii) failure to warn defects. *See French v. Commonwealth Assoc. Inc.*, 980 A.2d 623, 632 (Pa. Super. Ct. 2009) (citing *Phillips v. A-Best*, 665 A.2d at 1170). Plaintiff asserts a products liability claim under all three theories, which we will address in turn.

Plaintiff's manufacturing defect claim is grounded in the "malfunction theory"of product liability. *See O'Neill v. Checker Motors Corp.*, 567 A.2d 680, 682 (Pa. 1989) (for the proposition that malfunction theory claims are a subspecies

---

[5] *See French v. Commonwealth Assoc. Inc.*, 980 A.2d 623, 632 (Pa. Super. Ct. 2009) (a July 31, 2009 decision that reaffirmed that the Second RST is the law in Pennsylvania).

of manufacturing defect claims). To maintain a claim of products liability based on the malfunction theory, a plaintiff must prove: "(i) product malfunction; (ii) the absence of abnormal use; and (iii) the absence of reasonable secondary causes." *1836 Callowhill St. v. Johnson Controls, Inc.*, 819 F. Supp. 460, 462 (E.D. Pa. 1993) (citations omitted) (construing Pennsylvania law). Plaintiff asserts that the malfunction was the Freight Saver's failure to adequately vent nitrogen. (*See* Compl. ¶ 27). However, the complaint is bereft of any indications that the device was not subject to any *other* abnormal uses from the time it left ACF's possession to the time it reached Plaintiff. Indeed, there are absolutely no allegations from which a reasonable person could infer that the Freight Saver reached Plaintiff in a condition substantially unchanged from the time it left ACF's possession. Plaintiff simply has not provided us with a reason to foreclose the possibility that either the Freight Saver was subjected to abnormal uses prior to its arrival at Schirillo or that the malfunctioning of the device was produced by a reasonable secondary cause. Therefore, we do not believe that Plaintiff has adequately averred his products liability claim insofar as the same is grounded in the malfunction theory.[6] While we shall grant the instant Motion to this extent, we

---

[6] In an effort to conserve judicial resources, we shall not address the Defendant's "intended user" claim or Plaintiff's response thereto, since as cast Plaintiff's defective pleading provides technical grounds for dismissal of the manufacturing defect claim. Should Plaintiff

shall also grant the Plaintiff leave to amend this claim, as a corrective amendment may make it viable.[7]

Count II of the complaint also contains failure to warn[8] and design defect[9] claims. Under either theory, Plaintiff must show that the alleged defect rendered

---

amend his complaint and should Defendant renew this argument, we shall address it as necessary.

[7] At this juncture, we note that we are not required to grant a plaintiff leave to amend his complaint in a non-civil rights when he does not request the same. *Fletcher-Harlee v. Pate Concrete*, 482 F.3d 247, 253 (3d Cir. 2007). We are also aware that amendment "should be freely granted where justice so requires, [but is not required] where it would be futile to do so, where there has been undue delay in presenting the proposed claims, or where there would be undue prejudice to the defendant in allowing the amendment." *See Foman v. Davis*, 371 U.S., 178, 182 (1962). Further, we are cognizant that amendment has been permitted even after a complaint has been dismissed. *See Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) (noting that plaintiffs could have sought leave to amend after dismissal of their complaint).

The case at bar is a non-civil rights case in which the Plaintiff did not request leave to amend. Accordingly, per the dictates of *Fletcher-Harlee*, we may dismiss the complaint without offering the opportunity to amend. However, as we stated in the preceding footnote, our dismissal is based upon a technical omission in the complaint. Having elected to forego discussion of Defendant's other argument for dismissal of the manufacturing defect claim, we are not at all convinced that an amendment would be futile. Accordingly, we believe that justice requires us to afford Plaintiff the ability to amend his complaint. If such amendment is made, we shall, as noted, make a *de novo* review of the manufacturing defect claim if necessary.

[8] Plaintiff avers that the Freight Saver was "defective" because it did not bear adequate warnings advising people "that the nitrogen gas might not vent despite attempts to do so." (Compl. ¶ 29).

[9] Plaintiff contends that the Freight Saver was defective because it "failed to provide" any mechanism for determining if the nitrogen gas had vented. (Compl. ¶¶ 10, 29). It is our opinion that the use of the word "provide" is intended to convey Plaintiff's belief that ACF neither incorporated the nitrogen-gauging mechanism into the Freight Saver nor issued it as a separate piece of equipment. Put differently, we believe that the use of the word "provide" indicates that a nitrogen-gauging mechanism was either not issued by ACF, or altered or destroyed by other entities prior to Schirillo receiving the Freight Saver. Consequently, we view this claim as one sounding in defective design, and neither party has provided us with any reason to doubt this interpretation.

the Freight Saver unfit for its intended purpose. *United States v. Union Corp.*, 277 F.Supp. 2d 478 (E.D. Pa. 2003). Plaintiff does not contend that the alleged defect adversely affected the performance of the device during its useful life. Rather, the complaint indicates that the alleged defect adversely affected the Freight Saver's ability to be properly disassembled and discarded. Accordingly, Plaintiff must establish that the disassembly and disposal of the device was one of its intended uses.

The intended use of a product includes any use reasonably foreseeable to the manufacturer. *Sheldon v. West Band Equipment Corp.*, 718 F.2d 603, 608 (3d Cir. 1983) (construing Pennsylvania law). However, as a matter of law, the recycling of a product after the end of its useful life is not a use of the product reasonably foreseeable to the manufacturer. *See Kalik v. Allis-Chambers Corp.*, 658 F. Supp. 631, 635 (W.D. Pa. 1987). In the case *sub judice*, Plaintiff was injured while disassembling a device in preparation for its disposal. We believe that this process is sufficiently analogous to the recycling of a product so as to make the dictates of *Kalik* controlling.[10] Indeed, jurisprudence emanating from other states supports

---

[10] We note that *Kalik* was distinguished by the Pennsylvania Superior Court in *Donoughe v. Lincoln Elec. Co.*, 936 A.2d 52 (Pa. Super. Ct. 2007). The distinction was drawn in reference to what constituted a "product" for purposes of product liability. In the case at bar, there is no dispute that the Freight Saver constituted a "product" manufactured by ACF. Accordingly, the distinction drawn in *Donoughe* is of no moment at present.

this conclusion.[11]  Consequently, it is our determination that Plaintiff cannot

sustain his failure to warn and design defect claims against ACF because the

disassembly and disposal of the Freight Saver was not an "intended use" of the

device.  Accordingly, we will grant the instant Motion to that extent.

### B.    Count III–Breach of Warranty

In Count III of the complaint, Plaintiff asserts breaches of the implied

warranty of fitness for a particular purpose and the warranty of merchantability.

We address these theories in turn.

With regard to the warranty of fitness for a particular purpose, a breach

occurs when a seller: "(i) on whose skill and judgment a buyer relies, and (ii) who

has reason to know, at the time of contracting, (iii) of a particular purpose for

which the goods are required, (iv) fails to provide goods that perform to the

specific use contemplated by the buyer." *Oppenheimer v. York Int'l*, 2002 WL

31409949 *4 (Pa. Com Pl. 2002) (citing *Gall v. Allegheny County Health Dep't*,

---

[11] *See, e.g.*, *Monsanto Co. v. Reed*, 950 S.W. 2d 811, 814 (Ky. 1997) ("[A]s a matter of law . . . the dismantling and processing of junk electrical components was not a reasonably foreseeable use of GE's [electrical transformers]."); *High v. Westinghouse Elec. Corp.*, 559 So. 2d 227, 227-30 (Fla. 3d DCA 1989), *decision approved in part, quashed in part*, 610 So.2d 1259 (Fla. 1992) (as a matter of law, the unsealing, stripping, and dumping of the PCBs contained in defendant's transformers to salvage junk components were not reasonably foreseeable uses of the product and the employee was not an intended user); *Wingett v. Teledyne Indus., Inc.*, 479 N.E. 2d 51, 56 (Ind. 1985) (a manufacturer's potential liability for products placed in the stream of commerce does not extend to the demolition of the product).

555 A.2d 786 (Pa. 1989)). Plaintiff maintains that "the particular purpose for which the [Freight Saver] was not fit was its removal from service and disposal." (Doc. 13 p. 18). However, to establish a breach of this warranty, Plaintiff must show that the Freight Saver was defective. *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). As we have already concluded, we do not find this to be the case. Accordingly, we must grant the instant Motion to this extent.[12]

The implied warranty of merchantability is breached when *any* of the following merchantability standards for goods is not met:

> Goods to be merchantable must be at least such as:
>
> (i)     pass without objection in the trade under the contract description;
>
> (ii)    in the case of fungible goods, are of fair average quality within the description;
>
> (iii)   are fit for the ordinary purposes for which such goods are used;
>
> (iv)   run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
>
> (v)    are adequately contained, packaged, and labeled as the agreement may require; and
>
> (vi)   conform to the promises or affirmations of fact made on the container or label, if any.

---

[12] We shall, of course, revisit this analysis if necessary should the Plaintiff amend his manufacturing defect claim in a way that renders it viable.

*InfoComp., Inc. v. Electra Prods.*, 109 F.3d 902, 908 (3d Cir. 1997) (quoting 13 Pa.C.S. § 2314(b)).

Plaintiff's implied warranty of merchantability claim is based upon the putative defects in the Freight Saver.[13] Since we have already determined that the Freight Saver was not defective in the manner alleged by Plaintiff and that it was fit for the ordinary purposes for which it was used, we cannot hold ACF liable for a breach of the warranty of merchantability based upon those supposed defects recounted in the complaint. Therefore, we will grant the Defendant's Motion to this extent.[14]

## C. Count IV–Common Law Negligence

To establish a claim for negligence, the Plaintiff must allege each of the following elements: (i) a duty or obligation recognized by law requiring the Defendant to conform to a certain standard of conduct; (ii) a failure on the Defendant's part to conform to the required standards; (iii) a causal connection

---

[13] Plaintiff avers that ACF breached the warranty of merchantability because: (i) the Freight Saver failed to adequately vent nitrogen prior to its delivery to Schirillo; (ii) it failed to provide a warning that nitrogen gas might not adequately vent despite attempts to do so; and (iii) it failed to provide a mechanism by which to gauge the level of nitrogen gas before disassembly. (Compl. ¶¶ 31-32).

[14] As stated above, we shall likewise revisit this analysis if necessary should the Plaintiff amend his manufacturing defect claim in a way that renders it viable.

between the breach of duty and the resulting injury; and (iv) actual loss or resulting damage. *See Ferry v. Fisher*, 709 A.2d 399, 402 (Pa. Super. Ct. 1998).

"Duty . . . is predicated upon the relationship existing between the parties at the relevant time. Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. The scope of this duty is limited . . . to those risks which are reasonably foreseeable by the actor in the circumstances of the case." *Roche v. Ugly Duckling Car Sales*, 879 A.2d 785, 789 (Pa. Super. Ct. 2007). While we have already established that disposal of the Freight Saver was not an intended use, meaning that Plaintiff was not an intended user, that determination does not necessarily guide our negligence discussion. Indeed, the difference between "intended users" and "foreseeable users" has been recognized as one of the factors distinguishing strict product liability from common law negligence actions. *See Gaudio v. Ford Motor Co.*, 976 A.2d 524 (Pa. Super. Ct. 2009) (citation omitted). With this in mind, we note that the Plaintiff has averred that the Freight Saver was accompanied by a procedural manual that indicated the device was to be fully drained of nitrogen gas before disposal. (Compl. ¶ 9). Accordingly, while Plaintiff was certainly not an intended user of the Freight Saver, based upon ACF's recognition of the necessity of disposing of the device,

16

we believe that Plaintiff, as the disposer, was a foreseeable user of the same. Consequently, we believe that ACF owed Plaintiff a duty to avoid placing him at risk of harm.

With regard to breach, Plaintiff avers that ACF: (i) failed to provide a mechanism that would gauge the nitrogen levels inside the device's chamber; (ii) failed to warn him that the device may not be adequately drained of nitrogen despite attempts to do so; and (iii) failed to provide warnings directing him to check the nitrogen levels in the device before beginning disassembly. As previously noted, Plaintiff has averred that the Freight Saver was to be completely drained of nitrogen prior to disassembly. We can infer from the complaint that this was to be done for safety reasons. Accordingly, we believe that the above-referenced conduct provided occasion for the inadequate removal of nitrogen from the Freight Saver, which placed Plaintiff at risk of harm during disassembly. Therefore, we believe that these allegations support Plaintiff's contention that ACF breached its duty of care.

In order to establish causation, Plaintiff must prove that the breach was "both the proximate and actual cause of the injury." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005) (quoting *Reilly v. Tiergarten, Inc.*, 63 A.2d 208, 210 (Pa. Super. Ct. 1993)). "Proximate cause is a

question of law to be determined by the court before the issue of actual cause may be put to the jury" and involves "whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Lux*, 887 A.2d at 1287 (quoting *Reilly*, 63 A.2d at 210)).

ACF argues that proximate causation is lacking in the case at bar because it was not foreseeable that Plaintiff would come into contact with the Freight Saver or that the Norfolk Defendants would affix metal bars to the device. As we have already stated, given ACF's awareness of the need to drain the device of nitrogen prior to disposal, we believe that ACF should have foreseen that Plaintiff, as the disposer, would come into contact with the device. Consequently, we cannot saw that proximate causation was lacking based upon this contention.

With regard to the welding of the steel bars to the Freight Saver and the use of the oxy-acetylene torch to cut the same, we note that Plaintiff contends that "[s]uch a procedure was necessary to dispose of the unit." (Compl. ¶ 11). Reading this allegation in the light most favorable to the Plaintiff, we interpret the word "procedure" to include both the welding of the metal bars to the Freight Saver and the use of a oxy-acetylene torch to cut the same. Accordingly, we read the complaint to state that both of these actions were necessary for the proper disposal of the unit. ACF certainly should have been aware of the procedures that would

be necessary to properly dispose of its product and so we conclude that at this stage of the litigation, the Norfolk Defendant's fixation of the metal bars to the Freight Saver and Plaintiff's use of the torch to cut those bars were foreseeable to ACF. This determination is sufficient in establishing proximate causation.

Indeed, even in the absence of the above conclusion, we would still be under the impression that Plaintiff has established proximate causation. "If [an] actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." *Paliometros v. Loyola*, 932 A.2d 128, 134 (Pa. Super. Ct. 2007) (quoting *Rabutino v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 942 (Pa. Super. Ct. 2002)). Accordingly, it is of no moment that ACF may have not necessarily foreseen the welding of the metal bars to the Freight Saver or the use of the oxy-acetylene torch on the same; rather, the instructive inquiry is whether or not ACF could have foreseen that harm would be inflicted upon a disassembler if the nitrogen was not sufficiently drained. Again, based upon the allegations in the complaint, we believe that it is reasonable to assume that the draining-requirement was a safety procedure. Therefore, we believe it entirely foreseeable that the failure to sufficiently drain the Freight Saver prior to disassembly could cause harm to the

disassembler. Consequently, Plaintiff has sufficiently established proximate causation.

Finally, we believe that based upon the allegations in the complaint, a reasonable jury could find that the Plaintiff has satisfied the remaining requisites of a negligence cause of action. Indeed, a reasonable jury could determine that Plaintiff sustained injuries and that these injuries would not have been inflicted upon him had ACF faithfully discharged its duty of care.[15] Therefore, it is our opinion that Plaintiff has sufficiently alleged his common law negligence cause of action. The instant Motion will be denied to this extent.

**NOW, THEREFORE IT IS HEREBY ORDERED THAT**:

1.    Defendant ACF's Motion to Dismiss the Plaintiff's Complaint (Doc.

      7) is **GRANTED IN PART and DENIED IN PART** to the

      following extent:

      a.    The Motion is **GRANTED** insofar as it relates to Counts II and

            III of the complaint.

---

[15] While Plaintiff's manufacturing defect claim was deficient in light of his failure to foreclose the possibility that his injury was due to either reasonable secondary causes or abnormal uses after the device left ACF's control, the same is not fatal to his negligence claim. Indeed, even if the "malfunctioning" of the device was due to abnormal uses or secondary causes, ACF's conduct can still be seen as a "but for" factual cause of Plaintiff's injury because it is reasonable to assume that absent ACF's failures, Plaintiff would have checked the nitrogen levels in the device prior to disassembly and would have aborted the disassembly process when he discovered appreciable levels therein.

b.      The Motion is **DENIED** insofar as it related to Count IV of the

complaint.

2.      The Plaintiff is granted leave to file an amended complaint as to his

manufacturing defect claim as contained in Count II, which may then

permit him to reassert Count III.  Such amendment shall be filed

within 28 days of the entering of this Order and shall comply with the

dictates of Federal Rule of Civil Procedure 15 and Middle District of

Pennsylvania Local Rule 15.1.

John E. Jones III
United States District Judge